UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER T. SITARZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION No. |
| | ) |
| POWER PRODUCTS SYSTEMS, LLC | ) |
| D/B/A NEW ENGLAND DETROIT | ) |
| DIESEL-ALLISON | ) |

## COMPLAINT

Plaintiff, Christopher Sitarz ("Plaintiff" or "Sitarz") brings the following Complaint against Defendant, Power Products Systems, LLC d/b/a New England Detroit Diesel-Allison ("Power Products")

## PARTIES

1. Christopher Sitarz is an individual residing Lisbon, Maine. He makes his living as a mechanic, servicing all types of diesel engines and related equipment.

2. Power Products is a Delaware limited liability company with a principal place of business at 90 Bay State Road, Wakefield, Massachusetts 01880 and a branch office in Maine located at 432 Warren Avenue, Portland, Maine 04103.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction under 28 U.S.C. § 1331 is proper in the United States District Court with respect to Count I because this dispute involves a violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 and specifically 29 U.S.C. § 206(a), § 207(a), and § 216(b).

4.       The Court has supplemental jurisdiction with respect to Counts II, III, and IV over violations of the Maine Minimum Wage and Overtime Act pursuant to 29 U.S.C. § 1367(a).

5.       Venue in this district and in this division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(3) and 1391(c)(2), because Defendant conducts business in this district.

6.       This Court has personal jurisdiction over Defendant because the cause of action alleged arises out of its transacting business within the state of Maine where it regularly does business and engages in persistent course of conduct and derives substantial revenue from services rendered in this state.

## FACTS

7.       Power Products is in the business of selling and servicing all types of diesel engines and related equipment.

8.       Power Products is a dealer and distributor for brands of engines and equipment such as Volvo Penta, Detroit Diesel, Mercedes, and Allison Transmission.

9.       As a dealer and distributor for various brands of engines, Power Products is empowered by the manufacturers of those engines to offer their customers service covered by the manufacturer's warranty.  For example, as a dealer for Volvo Penta, a form of marine engine, Power Products can also perform warranty work on Volvo Penta engines and their drive systems.

10.       Pursuant to agreements between Power Products and the engine manufacturers, any mechanic providing warranty service on an engine must undergo factory training and be certified by the corresponding manufacturer to provide that service. For example, in order for

Power Products to perform warranty work on a Volvo Penta engine, it must employ a mechanic who has been trained and certified by Volvo Penta, who will perform the work.

11. Power Products generates substantial revenue from work that it performs which is covered under a manufacturer's warranty.

12. Having factory-certified mechanics is therefore crucial to Power Product's business.

13. The factory-certification process involves several hours of on-line pre-training. During the on-line phase, the mechanic learns about the various systems and is quizzed based on that knowledge. Only after completing the on-line training can a mechanic qualify to attend the live portion of the training and certification process.

14. The live portion of the training is delivered by employees or agents of the various manufactures and generally takes place at facilities owned or controlled by the manufacturers.

15. The live portion of the training requires over-night travel to places such as Florida and Rhode Island and can take as long as a week.

16. Once the mechanic has completed the training and demonstrated a certain level of competence, as determined by the manufacturer, they are considered "factory certified."

**Mr. Sitarz was never compensated for on-line training time.**

17. Mr. Sitarz has been working as a mechanic for more than 30 years.

18. Power Products hired Sitarz on or about November 21, 2011, as an at-will non-exempt hourly employee.

19. As part of his job responsibilities, Power Products required Mr. Sitarz to become factory certified in several different brands of engines and equipment including Volvo Penta, Detroit Diesel, Mercedes, and Allison Transmission.

20. Mr. Sitarz worked, on average, forty (40) or more hours per week.

21. Shortly after being hired, Mr. Sitarz set about completing the on-line pre-certification training for a variety of the brands of engines Power Products serviced.

22. The on-line training and pre-certification took several hours to complete. Mr. Sitarz estimates that the Detroit Diesel on-line program took 30 hours to complete; the Mercedes program took 15 hours to complete; the Allison transmission program took 12 hours to complete; and the Volvo Penta program took 40 hours to complete.

23. Mr. Sitarz was never compensated for the time he spent completing the on-line training.

24. Power Products was aware that Mr. Sitarz completed this training, and that they did not pay him for such time, as he had to complete the on-line training prior to attending the in-person training.

**Mr. Sitarz was not compensated for all of his travel time**

25. Once he had completed the on-line portion of the training, Power Products instructed Mr. Sitarz to attend the live, in-person factory training.

26. Pursuant to a company policy, Mr. Sitarz was only permitted to punch in for 8 hours per day Monday through Friday, regardless of how much travel time was required to and

from the locations where the trainings were held and regardless of the day that the travel occurred.

27.     There were several instances where Mr. Sitarz's travel and training time exceeded 8 hours, but he was only compensated for 8 hours.

28.     There were also times when Mr. Sitarz was required to travel on weekends, and for that time, he was not compensated at all.

**Mr. Sitarz was not compensated for his on-call time**

29.     During Mr. Sitar's employment, Power Products maintained an on-call policy requiring mechanics to take phone calls outside of work hours to diagnose customer problems, offer potential solutions, and if necessary respond to the customer's location to fix the problem.

30.     The on-call policy allowed Mr. Sitarz to record his time spent traveling and working on engines in response to calls.

31.     The on-call policy prohibited Mr. Sitarz from recording the time spent on the phone with customers while he trouble shot, or diagnosed Power Product's customer's engine problems.

32.     When he was on call, Mr. Sitarz received calls at all hours of the night and on the weekends.

33.     Ordinarily, when a Power Products customer needs service, they call Power Products and their call is routed to the best person to take it.  When a call comes in after hours or on the weekends, the calls are ordinarily routed to the mechanic on-call.

34. Often Power Products' customers would complain to Mr. Sitarz about the slow response time when they would call the Power Products phone number.

35. Because Power Products was slow to respond to their customer phone calls, they would call Mr. Sitarz directly.

36. Even when he was not on call, Mr. Sitarz would receive phone calls from Power Products' customers at all hours of the night, and on weekends.

37. Mr. Sitarz was not compensated at all for the time he spent on the phone with Power Products' customers.

**Mr. Sitarz was illegally intimidated and coerced into refunding expenses related to his training**

38. On or about April 14, 2017, Power Products compelled Mr. Sitarz to sign an acknowledgment of their Training Reimbursement Policy.

39. The Training Reimbursement Policy requires employees to refund 100% of the training expenses incurred by the company, including travel expenses and meals, if the employee leaves the company within 12 months of receiving the training.

40. The training that employees receive is for the benefit of Power Products so that Power Products has "factory trained" mechanics who can perform work under different manufacturer's warranties.

41. Power Products' Training Reimbursement Policy does not treat the payment for training as a loan, debt, or advance to the employee.

42. As part of his job responsibilities, Mr. Sitarz attended factory training on Volvo Penta engines in April of 2017.

43. Volvo Penta did not charge Power Products for the training.

6

44. Power Products paid for Mr. Sitarz's travel expenses including airfare, lodging, rental car, and other expenses.

45. The travel expenses incurred in the training were a necessary expenses for Power Products so Mr. Sitarz could perform his job of providing warranty service on Volvo Penta engines.

46. Mr. Sitarz resigned his employment on or about August 31, 2017.

47. On September 1, 2017, Power Products demanded that Mr. Sitarz pay back his travel expenses related to the Volvo Penta training he attended in April of 2017 by sending him an invoice and threatening to charge him interest if the funds were not returned.

48. In response to Power Products' demands, Mr. Sitarz requested a copy of the Training Reimbursement Policy.  Power Products did not respond.

49. On November 22, 2017, Mr. Sitarz was served with a Complaint and a summons to appear in the Superior Court of Massachusetts alleging, among other things, that he is in breach of contract for not paying back his travel expenses.

50. Facing intimidation and coercion, on or about November 27, 2017, Mr. Sitarz contacted Power Products and gave them his credit card number to pay the invoice.

51. On or about December 14, 2017, Mr. Sitarz' credit card was charged $1,476.60 by Power Products for payment of the invoice.

### COUNT I
### Power Products Violated the Minimum Wage Requirements of the Fair Labor Standards Act of 1938 (FLSA)
### 29 U.S.C. § 206(a) and § 216(b).

52. Plaintiff incorporates all allegation set forth in the foregoing paragraphs as though fully alleged herein.

53. Power Products is Mr. Sitarz's "employer" as that term is defined in the FLSA.

54. At all relevant times, Power Products has been an employer engaged in interstate commerce consistent with 29 U.S.C. §§ 206(a) and 207(a).

55. At all relevant times, Power Products has had annual gross revenues in excess of $500,000.00.

56. Mr. Sitarz was an employee of Power Products within the meaning of the FLSA.

57. Power Products failed to compensate Mr. Sitarz according to the minimum wage and overtime requirements set forth in the FLSA.

58. Power Products unlawfully maintained policies and practices which denied payment of wages (and overtime wages) for time spent traveling for work training and attending work training outside of 8 hours per day, travelling for and attending training on weekends, responding to customer questions/concerns, and obtaining online training.

**59.** Power Products' actions were taken with willful disregard for the rights of Plaintiff and other similarly situated employees under the FLSA, and as a result, Power Products is liable to Plaintiff for his economic damages including, but not limited to, such wages, liquidated damages, and the costs of the action, including costs or fees of any nature and reasonable attorney's fees.

## COUNT II
## Power Products Violated 26 M.R.S.A. § 629

60. Plaintiff incorporates all allegation set forth in the foregoing paragraphs as though fully alleged herein.

61. Manufacturers provide free training to mechanics in order for them to be factory-certified mechanics who can provide services pursuant to engine warranties.

62. As a condition for maintaining employment at Power Products, Power Products required Mr. Sitarz to enter into a written agreement to refund payments Power Products made to Mr. Sitarz as reimbursement for travel expenses, including hotel costs, airfare, rental car expenses, and meal expenses related to free training he received from manufacturers.

63. Attending and completing this training was a necessary element of his job duties and responsibilities and was performed for the benefit and convenience of Power Products.

64. Power Products unlawfully threatened and coerced Mr. Sitarz into returning these funds in the form of wages.

65. As a result of Power Product's unlawful conduct, Mr. Sitarz suffered a loss of wages, and thus Power Products is liable to Mr. Sitarz for his economic damages including, but not limited to such wages, liquidated damages, and the costs of this action, including costs or fees of any nature and reasonable attorney's fees.

## COUNT III
## Power Products Violated 26 M.R.S.A. § 664

66. Plaintiff incorporates all allegation set forth in the foregoing paragraphs as though fully alleged herein.

67. Power Products willfully and intentionally failed and/or refused to pay to Mr. Sitarz the minimum wage and overtime rate owed to him under 26 M.R.S.A. § 664.

68. Power Products unlawfully maintained policies and practices which denied payment of wages for time spent traveling for work training and attending work training outside of 8 hours per day, travelling for and attending training on weekends, responding to customer questions/concerns, and obtaining online training.

69. On weeks in which Mr. Sitarz had to travel for work training and attend work training outside of 8 hours per day, travel for and attend training on weekends, respond to customer questions/concerns, and obtain online training he worked in excess of 40 hours per week and was not compensated at a rate of time and a half for such work.

70. As a result of Power Product's unlawful conduct, Mr. Sitarz suffered a loss of wages, and thus Power Products is liable to Mr. Sitarz for his economic damages including, but not limited to such wages, liquidated damages, and the costs of this action, including costs or fees of any nature and reasonable attorney's fees.

## COUNT IV
## Power Products Violated 26 M.R.S.A. § 626

71. Plaintiff incorporates all allegation set forth in the foregoing paragraphs as though fully alleged herein.

72. Upon Plaintiff's cessation from employment with Power Products on or around August 31, 2017, Power Products had not paid Plaintiff his regular rate of pay or overtime pay for time associated with traveling for work training and attending work training outside of 8 hours per day, travelling for and attending training on weekends, responding to customer questions/concerns, and obtaining online training.

73. On December 18, 2017, Plaintiff, through counsel, made a demand for payment for unpaid time associated with traveling for work training and attending work training outside of

8 hours per day, travelling for and attending training on weekends, responding to customer questions/concerns, and obtaining online training.

74. As of the date of the filing of this Complaint, Power Products has not paid the unpaid wages due and owing in violation of 26 M.R.S.A. § 626.

75. As a result of Power Product's unlawful conduct, Mr. Sitarz suffered a loss of wages, and thus Power Products is liable to Mr. Sitarz for his economic damages including, but not limited to such wages, interest on said wages, liquidated damages pursuant to 26 M.R.S.A. § 626, and the costs of this action, including costs or fees of any nature and reasonable attorney's fees.

### PRAYER FOR RELIEF

WHEREOFRE, Plaintiff prays that this Honorable Court:

A. Declare that Power Products knowingly, willfully, and maliciously violated Maine law and the FLSA with respect to Plaintiff;

B. Award judgment in the amount of the different between the wages actually paid to Plaintiff and the wages owed to him under Maine law and the FLSA;

C. Award liquidated damages as provided for under Maine law and the FLSA;

D. Award prejudgment interest;

E. Award reasonable attorney's fees and the costs of this action as provided for under Maine law and the FLSA; and

F. Award any such further relief this Honorable Court deems just and proper to award.

| | |
|---|---|
| Dated: January 2, 2018 | s/Benjamin E. Ford_____ |

                                      Benjamin E. Ford, Bar No. 4828
                                      Tawny Alvarez, Bar No. 5173
                                      Verrill Dana, LLP
                                      One Portland Square
                                      Portland, Maine 04112-0586
                                      Tel: (207) 774-4000
                                      Fax: (207) 774-7499

                                      bford@verrilldana.com
                                      talvarez@verrilldana.com

                                      Attorneys for Plaintiff
                                      Christopher Sitarz